UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

**MARTIN C. CARTER**                                              CASE NO. 14-11368

DEBTOR                                                             CHAPTER 13

IN RE:

**ORA CARTER**                                                    CASE NO. 15-10687

DEBTOR                                                             CHAPTER 7

**TOWER CREDIT, INC.**

PLAINTIFF

V.                                                                 ADV. NO. 15-1014

**MARTIN C. CARTER**
**ORA C. CARTER**

DEFENDANTS

**MEMORANDUM OPINION**

Tower Credit, Inc. sued for a determination that its claim against debtors Martin and Ora Carter is not dischargeable under 11 U.S.C. §523(a)(2)(A) and (B). This memorandum opinion sets forth the reasons the obligation is nondischargeable.

**Facts**

*The Tower Loan Application*

Martin and Ora Carter applied to Tower on September 7, 2010 to borrow $2,000 to pay for home improvements.[1] Both debtors signed the face of the four-page application and also a

---

[1] September 7, 2010 credit application (Exhibit Tower 1).

separate document reciting that the information on their loan application was true and correct and included all their debts.[2]  Another document comprising other financial and personal information bore their signatures below language warning that failure to disclose all information "truly and completely will constitute fraud."[3]  The loan process culminated with Mr. and Mrs. Carter's signing a $5,376.14 promissory note.[4]

The debtors eventually defaulted on the loan and Tower obtained a judgment against them in the Baton Rouge City Court.[5]  On October 28, 2014, the Carters filed a joint chapter 13 petition.  The debtors' joint bankruptcy case was severed on June 12, 2015 (P-53) after which Mrs. Carter proceeded with a chapter 7 liquidation.[6]

*The Debtors' Alleged Misstatement*

The Carters' application recited that they wanted the loan to make unspecified "home improvements."  This proved to be untrue: Ora Carter testified at the meeting of creditors that they used the money to open a restaurant.[7]  The defendants sought to shrug off the testimony as an error, insisting that Mrs. Carter was "thinking about loan we had make [sic] in 2011 with Pioneer Credit for the restaurant."[8]  But at trial both Martin and Ora Carter admitted that the restaurant project only came into existence in 2011, nearly a year after the 2010 Tower loan.

---

[2]  September 13, 2010 credit application verification page (Exhibits Tower 4 for Ora Carter and 5 for Martin Carter).

[3]  September 13, 2010 loan application addendum (Exhibits Tower 2 for Ora Carter and 3 for Martin Carter).

[4]  September 13, 2010 promissory note (Exhibit Tower 6).  The $5,376.14 the debtors borrowed comprised among other amounts $2,301.11 to pay off their 2009 loan with Tower.  The 2010 loan netted the debtors $2000 in new money.

[5]  December 17, 2012 judgment in "Tower Credit, Inc. v. Ora Carter and Martin Carter," Baton Rouge City Court case no. 12-09123, for $4,272.46 plus interest, attorneys' fees and costs (Exhibit Tower 7).

[6]  Tower filed the complaint commencing this adversary proceeding on January 19, 2015, prior to the severance.

[7]  Transcript of December 1, 2014 meeting of creditors, p. 21, ll. 1-23 (Exhibit Tower 8).

[8]  Answer to Complaint, ¶7 (P-6).

2

Still, they reiterated their claim that they borrowed the money for the restaurant from Pioneer Credit. They notably offered no evidence that they'd at first planned to make the home repairs but later changed their minds.

The Carters also offered no evidence to corroborate that they'd borrowed money from Pioneer to open a restaurant. In fact, the only documentary evidence of the debtors' dealings with Pioneer refutes their contention. Specifically, the debtors' original schedules, as well as the amended schedules Ora Carter filed in her severed case, listed a debt to Pioneer for a loan in 2009, well before the defendants embarked on the restaurant project.[9] In addition, the only proof of claim Pioneer filed in either bankruptcy was in Ora Carter's case, for a 2011 loan to Tamara Cage (Ora Carter's daughter) to make car repairs. Ora Carter was a co-maker on that obligation.[10]

*Tower's Loan Process*

Stephen Binning, Tower's president, testified at trial concerning the 2010 loan to the Carters. Mr. Binning didn't take the debtors' application and the evidence left some doubt concerning his personal knowledge of Tower's dealings with them when they applied for the loan. However, Binning stated that the debtors either filled out the loan application or helped Tower staff to do so. In any case he identified the loan documents and verified that they bore the debtors' signatures.

Binning did not know of the debtors' plan to use the loan proceeds to open a restaurant rather than for home repairs until he questioned them at the meeting of creditors. The revelation

---

[9] Schedule F filed in case number 14-11368 (P-2); amended schedule F filed in case number 15-10687 (P-61). Both debtors testified at their chapter 13 meeting of creditors in 2014 that they had read and signed their schedules and that they were true and correct. Transcript of December 1, 2014 meeting of creditors, p. 3, ll. 13-20 (Exhibit Tower 8).

[10] Pioneer proof of claim in case number 15-10687 (Exhibit Tower 9).

3

prompted Tower to file the dischargeability complaint. According to Mr. Binning, Tower would not have made the loan had the debtors disclosed their plan to use the funds to open a restaurant. Binning explained that his company considered a loan for that purpose too risky. Tower needed to know that the debtors had a stable income in order to be able to repay their loan. Binning did not consider opening a new restaurant a sufficiently stable source of income to make the loan payments.

*The Debtors' Failure to Respond to Discovery*

The Carters failure to reply to Tower's discovery requests also bears on the outcome of this proceeding.

Tower served interrogatories, requests for production of documents and requests for admissions on the defendants on June 4, 2015.[11] The plaintiff asked the Carters to admit:

(1) that at the time of the Tower loan application they planned to use the loan proceeds to open a restaurant;

(2) that they used the extension of credit from the 2010 loan to open a restaurant;

(3) that the assertion in their answer that they borrowed money from Pioneer to open the restaurant is a fabrication; and

(4) that they obtained the extension of credit by means of false representations, fraud and materially false financial statements with the intent to deceive.[12]

The debtors never answered or objected to the requests for admission, nor did they respond to any of the other Tower discovery requests.

---

[11] Interrogatories (P-14), Requests for Production of Documents (P-15), Requests for Admissions (P-16) and Certificate of Service (P-17).

[12] Requests for Admissions Nos. 5, 6, 7 and 8.

4

## Analysis

*Tower Proved its Debt is Not Dischargeable Under 11 U.S.C. §523(a)(2)(A)*

Tower alleges that the Carters' actions render their debt to Tower nondischargeable under 11 U.S.C. §523(a)(2)(A),[13] which excepts from discharge any debt:

"for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by —

>   (A) false pretenses, a false representation, or actual fraud,
>      other than a statement respecting the debtor's …
>      financial condition … ."

Section 523(a)(2)(A) applies to debts obtained by fraud "involving moral turpitude or intentional wrong, and any misrepresentations must be knowingly and fraudulently made." *Matter of Martin*, 963 F.2d 809, 813 (5th Cir. 1992).

To prevail under 11 U.S.C. §523(a)(2)(A), Tower must prove that: (1) the Carters made a representation; (2) they knew the representation was false; (3) they made the representation with the intent to deceive Tower; (4) Tower actually and justifiably relied on the Carters' representation; and (5) Tower sustained a loss as a proximate result of its reliance on the representation. *Matter of Acosta*, 406 F.3d 367, 372 (5th Cir. 2005).

The Carters have not argued or offered any evidence supporting relief from the consequences of their failure to respond to Tower's discovery requests. Because the Carters did not timely reply or object to Tower's requests for admissions, the matters listed in the requests

---

[13] Because the debtors' allegedly false representation was contained in their written loan application, section 523(a)(2)(B), not section 523(a)(2)(A), seemingly would govern the dischargeability of their debt to Tower because that section addresses false *written* statements concerning a debtor's financial condition. 4 COLLIER ON BANKRUPTCY ¶523.08, p. 523-43 (16th ed. 2015) ("False financial statements are dealt with separately in section 523(a)(2)(B) and the exclusion from paragraph (A) makes clear that the false financial statement exception falls within a category separate from the false representation or actual fraud exception and is subject to special conditions to be met before the exception becomes effective. Paragraphs (A) and (B) of section 523(a)(2) are mutually exclusive"). However, although the defendants' false representation was written it did not relate directly to their financial condition, bearing instead on the Carters' reason for the loan. Accordingly, section 523(a)(2)(A) is applicable.

were admitted. Fed. R. Bankr. P. 7036(a)(3). Thus, the defendants have admitted that the reason they gave for borrowing from Tower – to make home improvements – was false when they gave it, and also that they knew it was false because they planned to use the loan proceeds to open a restaurant. The Carters also have admitted that they made the false representation to obtain credit with the intent to deceive Tower. These admissions satisfy Tower's burden of proving the first three elements of section 523(a)(2)(A).

Pretermitting the defendants' failure to make discovery, the evidence supports a finding that the defendants made a false representation with the intent to deceive Tower. "'When it is not disputed that a loan application was signed by the [d]ebtor, then the contents of the application should, in general, be attributed to the [d]ebtor and entitled at least to great weight, and perhaps decisive effect.'" *In re Williams*, 431 B.R. 150, 155 (Bankr. M.D. La. 2010), *quoting In re Kabel*, 184 B.R. 422, 425 (Bankr. W.D.N.Y. 1992). The debtors' contradictory statements regarding their plans for the 2010 Tower loan proceeds, coupled with the lack of evidence to corroborate their claims, undermines their credibility. Rather, the evidence established that the Carters were at least indifferent to the complete accuracy of the loan application. Lack of care when signing loan documents evidences a reckless disregard for the correctness of the information in the application, and thus establishes intent to deceive for purposes of applying section 523(a)(2). *In re Butski*, 184 B.R. 193, 195 (Bankr. W.D.N.Y. 1993), citing *In re Coughlin*, 27 B.R. 632, 636 (1st Cir. BAP 1983).

The next issue is whether Tower relied on the defendants' misstatement in deciding to extend credit to them. Tower must prove that in deciding to loan the Carters money, it *justifiably* relied on their misrepresentation to render its claim non-dischargeable under Bankruptcy Code section 523(a)(2)(A). *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed. 2d. 351 (1995).

6

Justifiable reliance is gauged by "'an *individual* standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case.'" *In re Vann*, 67 F.3d 277, 283 (11th Cir. 1995), quoting PROSSER & KEATON ON TORTS §108 at 751 (5th ed. 1984) (emphasis in original). "'It is only where, under the circumstances, the facts should be apparent to one of the plaintiff's knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation on his own.'" *Vann* at 283, quoting PROSSER & KEATON ON TORTS at 752.

The evidence established that the Carters had been Tower customers since June 2009. No evidence supported an inference that Tower had any reason to investigate any information the Carters gave it to obtain the 2010 loan. Accordingly Tower established that it justifiably relied on the information in the defendants' loan application and carried its burden of proving that the Carters' debt to it is non-dischargeable under 11 U.S.C. §523(a)(2)(A).[14]

*Tower also Proved that the Debt is Nondischargeable Under 11 U.S.C. §523(a)(2)(B)*

Bankruptcy Code section 523(a)(2)(B) renders nondischargeable a debt "for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by —

(B) use of a statement in writing —

    (i)    that is materially false;

    (ii)    respecting the debtor's or an insider's financial condition;

    (iii)    on which the creditor to whom the debtor is liable for such…credit reasonably relied; and

---

[14] That the September 2010 loan comprised in part renewal of an existing obligation (because the defendants borrowed enough in 2010 to pay the 2009 loan balance) makes no difference to this analysis. Section 523(a)(2) also makes nondischargeable a debt for renewal of an earlier loan when the lender does not advance new funds, even if the borrower's false representation came at loan renewal and not when the loan was first made. *Matter of Norris*, 70 F.3d 27, 29-30 (5th Cir. 1995).

7

      (iv)    that the debtor caused to be made or published with intent to deceive."

A written statement is materially false under 523(a)(2)(B) if it "'paints a substantially untruthful picture of a financial condition by *misrepresenting information of the type which would normally affect the decision to grant credit*.'" *Matter of Norris*, 70 F.3d 27, 30 (5th Cir. 1995), quoting *In re Jordan*, 927 F.2d 221, 224 (5th Cir. 1991) (Emphasis added).

In contrast to section 523(a)(2)(A), a declaration of nondischargeability under section 523(a)(2)(B) requires proof that the creditor *reasonably* relied on the debtor's false statements:

> The reasonableness of a creditor's reliance…should be judged in light of the totality of the circumstances. The bankruptcy court may consider, among other things: whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and whether even minimal investigation would have revealed the inaccuracy of the debtor's representations.

*Matter of Coston*, 991 F.2d 257, 261 (5th Cir. 1993).

Tower proved that the debtors' loan application contained a materially false statement within the meaning of section 523(a)(2)(B). They misrepresented the reason for the loan, information that Binning indicated Tower normally would use to decide whether to grant the loan. The defendants do not challenge Tower's claim of reliance: they contend that their statement on the application was correct. The record belies their argument. The Carters' claim that Ora Carter merely misspoke at the meeting of creditors when she claimed that the defendants had used the Pioneer Credit loan to open a restaurant was not corroborated and not credible given its inconsistency with sworn testimony at the meeting of creditors. The debtors' reckless disregard for the truth of what was in the loan application further evidences their intent to deceive Tower with a false representation of the purpose for the loan. *See Butski*, 184 B.R. at 195, *Coughlin*, 27 B.R. at 636.

8

Tower also proved that it reasonably relied on the debtors' misrepresentation. No party offered any evidence suggesting that "red flag" that should have warranted Tower's further investigation of the information on the debtors' 2010 credit application, especially in light of the parties' prior relationship. Accordingly, Tower reasonably relied on information the debtors gave it in September 2010. The Carters' debt to Tower therefore is nondischargeable under section 523(a)(2)(B).

## CONCLUSION

Tower Credit proved that Martin and Ora Carters' debt to it is nondischargeable under both 11 U.S.C. §523(a)(2)(A) and 11 U.S.C. §523(a)(2)(B). The debt to Tower is nondischargeable under Bankruptcy Code section 523(a) in Martin Carter's chapter 13 case as well as in Ora Carter's chapter 7 liquidation. 11 U.S.C. §1328(a)(2).

Baton Rouge, Louisiana, September 24, 2015.

<u>**s/Douglas D. Dodd**</u>
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE